No. 21-15367

# United States Court of Appeals
# For the Ninth Circuit

---

TREASURE ISLAND, LLC,
Plaintiff-Appellant,

v.

AFFILIATED FM INSURANCE CO.,
Defendant-Appellee.

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA, NO. 2:20-CV-00965-CDS-EDJ [SILVA, J.]

---

## APPELLANT TREASURE ISLAND, LLC'S OPPOSED MOTION TO CERTIFY QUESTIONS OF LAW TO THE NEVADA SUPREME COURT

---

Harry L. Manion
Christopher J. Cunio
Nicholas D. Stellakis
Hunton Andrews Kurth LLP
60 State Street, Suite 2400
Boston, Massachusetts 02109
(617) 648-2800
hmanion@huntonAK.com
ccunio@huntonAK.com
nstellakis@huntonAK.com

Michael S. Levine
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
(202) 955-1500
mlevine@huntonAK.com

Dated: February 26, 2025

## <u>TABLE OF CONTENTS</u>

BACKGROUND ....................................................................................4

I.    THE ALL-RISK INSURANCE POLICY IN THIS CASE MATERIALLY DIFFERS FROM THE POLICY IN *JGB VEGAS RETAIL* BY EXPRESSLY COVERING COMMUNICABLE DISEASE. ...............................................................................5

II.    THE FIRST DISTRICT JUDGE DENIES AFM'S MOTION FOR SUMMARY JUDGMENT ON ALL COVERAGE CLAIMS. ....................................................7

III.    AFTER "REASSIGNMENT," THE SECOND DISTRICT JUDGE SUMMARILY DISMISSES ALL CLAIMS BASED SOLELY IN *JGB VEGAS RETAIL*. ...............................9

IV.    THERE IS EXTRINSIC EVIDENCE OF EXPRESS INTENT TO COVER THE PHYSICAL LOSS OR DAMAGE FROM A COMMUNICABLE DISEASE, EVIDENCE THAT AFM WAS SANCTIONED FOR HIDING. ...............................................................10

V.    THE NEVADA SUPREME COURT HAS AGREED TO CONSIDER *BLOOMIN' BRANDS*, AN APPEAL THAT PRESENTS ISSUES SIMILAR TO THIS CASE. ...............11

ARGUMENT .......................................................................................14

I.    THE CASE PRESENTS IMPORTANT, POTENTIALLY DETERMINATIVE QUESTIONS OF LAW FOR WHICH THERE IS NO CONTROLLING PRECEDENT IN NEVADA. ...............15

II.    THE NEVADA SUPREME COURT IS ALREADY CONSIDERING SIMILAR ISSUES, MAKING CERTIFICATION ESPECIALLY APT. ...........................................18

CONCLUSION ....................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Bloomin' Brands, Inc. v. ACE Am. Ins. Co.*,
  No. A-21-830204-B (Nev. Dist. Ct. June 21, 2024), slip. op. ......................12, 13

*C.J. Segerstrom & Sons v. Lexington Ins. Co.*,
  724 F. Supp. 3d 1052 (C.D. Cal. Feb. 27, 2023) .........................................16, 17

*First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*,
  631 F.3d 1058 (9th Cir. 2011) ...............................................................................16

*French Laundry Partners, LP v. Hartford Fire Ins. Co.*,
  58 F.4th 1305 (9th Cir. 2023) ................................................................................19

*Frlekin v. Apple, Inc.*,
  979 F.3d 639 (9th Cir. 2020) .................................................................................12

*Int'l Game Tech. v. Illinois Nat'l Ins. Co.*,
  No. 216CV02792APGNJK, 2017 WL 5505039 (D. Nev. Nov. 16,
  2017) ......................................................................................................................16

*N. River Ins. Co. v. James River Ins. Co.*,
  116 F.4th 855 (9th Cir. 2024) ...................................................................15, 18

*Starr Surplus Lines Insurance Co. v. Eighth Judicial District Court*,
  535 P.3d 254 (Nev. 2023) ("*JGB Vegas Retail* ") .....................................*passim*

*Thompson v. Paul*,
  547 F.3d 1055 (9th Cir. 2008) ..............................................................................19

*Treasure Island, LLC v. Affiliated FM Ins. Co.*,
  2023 WL 6295500 (D. Nev. Sept. 26, 2023) ("*Treasure Island I*") ............10, 11

*Treasure Island, LLC v. Affiliated FM Ins. Co.*,
  2024 WL 324782 (D. Nev. Jan. 26, 2024) ("*Treasure Island II*").....................11

*Wilmington Trust FSB v. A1 Concrete Cutting & Demolition, LLC*,
  289 P.3d 1199 (Nev. 2012).........................................................................15, 18

*Zurich American Insurance Co. v. Eighth Judicial District Court*,
    No. 89236 (Nev.) ("Bloomin' Brands").......................................................*passim*

**Other Authorities**

Fed. R. Ev. 201, 1972 advisory committee note.......................................................12

Nevada Rules of Appellate Procedure Rule 5 .......................................................14

The Nevada Supreme Court has pending before it today a case raising legal questions similar to those in this case, in another insurance-coverage action arising from the COVID-19 pandemic: *Zurich American Insurance Co. v. Eighth Judicial District Court*, No. 89236 (Nev.) ("*Bloomin' Brands*"). The Nevada Supreme Court accepted the *Bloomin' Brands* case on interlocutory review to determine whether its decision in *Starr Surplus Lines Insurance Co. v. Eighth Judicial District Court*, 535 P.3d 254 (Nev. 2023) ("*JGB Vegas Retail*") applies to a series of insurance policies that contain explicit coverage for infectious or contagious diseases. This case raises a similar question. Because of the similarity and the fortuitous timing, this Court should certify a question of law to the Nevada Supreme Court so that this case can be considered by that court in tandem with *Bloomin' Brands*.

At the heart of this case is the claim by Plaintiff-Appellant Treasure Island, LLC ("Treasure Island") for coverage under an all-risk insurance policy ("Policy") it purchased from Defendant-Appellee Affiliated FM Insurance Co. ("AFM"). Exhibit A (order on motions for summary judgment, ECF 301), at 1.[1] That Policy, like the policies in *Bloomin' Brands*, but unlike most other insurance policies under which claims were presented during the pandemic, expressly evinces the parties'

---

[1] The record below is cited by the district court's ECF number. Material documents in the record are appended hereto as Exhibits. Page references are to the ECF header. Treasure Island will provide the other documents cited for background should the Court request.

intent to cover the risks presented by certain communicable diseases. Treasure Island sought coverage for its losses arising from the COVID-19 pandemic, including the losses from the physical loss or damage that COVID-19 caused. *Id*. When AFM denied that claim, Treasure Island filed this case. *Id*. at 2; ECF 1 (complaint). The district judge assigned to this case from its inception denied AFM's motion for summary judgment. <u>Exh. A</u>. He held that Treasure Island had amassed sufficient evidence that it suffered physical loss or damage, within the meaning of the AFM Policy, based on that Policy's material difference from the insurance policy in *JGB Vegas Retail*, and he set the case for a March 2025 trial on Treasure Island's claim for coverage. *Id*. at 10; <u>Exhibit B</u> (docket), at ECF 312. In November 2024, the case was "administratively reassigned" without explanation and, nine days later, the new district judge abruptly reversed course and dismissed the case, holding that *JGB Vegas Retail* controlled the result. <u>Exh. B</u> at ECF 326; <u>Exhibit C</u> (order dismissing case, ECF 327).

But *JGB Vegas Retail* differs from this case in a way that the Nevada Supreme Court has twice indicated is significant: AFM's Policy contains express coverage grants for Communicable Disease. <u>Exhibit D</u> (AFM Policy, ECF 2-1), at 23, 41.[2] The Nevada court *first* emphasized the importance of this distinction in

---

[2] Both judges below cited the copy of the Policy appended to the complaint. For convenience, Treasure Island does the same. There is no dispute about the relevant policy language.

2

*JGB Vegas Retail* itself, when that court stated that the "context" of policy provisions expressly granting communicable-disease coverage can impart a broader meaning to words that might be more narrowly construed absent that context. *JGB Vegas Retail*, 535 P.3d at 268. The Nevada court underscored the importance of the distinction when it took up *Bloomin' Brands* to "clarify" what *JGB Vegas Retail* left open—whether the phrase "physical loss or damage" encompasses the physical effects on insured property that a virus causes, in the "context" of a policy that expressly covers the physical impacts that a contagious disease may have on property.

The setting and timing are apt: this Court should certify the following questions to the Nevada Supreme Court:[3]

> Was it error to interpret the phrase "physical loss or damage," as used in the AFM Policy that explicitly covers the risk of Communicable Disease, as having the exact same meaning as the phrase "physical loss or damage" when used in a policy that offers no explicit indicia of intent to cover Communicable Disease?

> Does *JGB Vegas Retail* control the meaning of the phrase "physical loss or damage" when there is evidence of contracting intent that informs of a specifically intended meaning?

> Is indoor air insured under a property-insurance policy, under Nevada law?

---

[3] There is no dispute that Nevada law governs. Both parties proceeded below on that premise. ECF 265 (AFM's motion for summary judgment); ECF 272 (Treasure Island's opposition to AFM's motion for summary judgment).

## **BACKGROUND**[4]

As stated, this is an insurance-coverage action for the losses Treasure Island suffered because of the COVID-19 pandemic. Exh. A at 1. The Policy it purchased from AFM covered "all risks of physical loss or damage," subject to exclusions, for the period March 20, 2019, through March 20, 2020. *Id*.; Exh. D at 4, 17. Among those "risks" is the peril of Communicable Disease, described specifically by the insurer as "[p]hysical loss or damage which results from the actual presence of a communicable disease and the associated business interruption as defined in the policy." ECF 281 at 1.

Individuals with COVID-19 were present on-site at Treasure Island's resort and casino in 2020 during the term of the Policy. Exh. A at 1, 5-7. Treasure Island determined that COVID-19 was on-site and damaging property and made the decision to close before any governmental order issued regarding closure. ECF 272 at 22 (and evidence cited); 26. Treasure Island's complaint, filed after AFM denied coverage, sought declaratory relief and alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Nevada Unfair Claims Practices Act. Exh. A at 2.

---

[4] This motion is directed toward certification of a question of law. Treasure Island does not waive any argument it might present in briefing on the merits of this appeal.

## I.  The all-risk insurance policy in this case materially differs from the policy in *JGB Vegas Retail* by expressly covering Communicable Disease.

Unlike the policy in *JGB Vegas Retail*, the AFM Policy expressly covers the risk of communicable disease, and it does so in two discrete ways.

*First*, the Policy contains two presence-based coverage grants for communicable disease, neither of which requires physical loss or damage. Exh. D at 23, 41. Each is sublimited to $100,000. *Id*. at 6-7. The same trigger applies to both communicable disease coverages—communicable disease is actually present on-site and there is (a) an order by an authorized governmental agency regulating the same or (b) a decision by Treasure Island regarding the same. *Id*. at 23, 41. Communicable Disease–Property Damage covers the cost of "[c]leanup, removal and disposal" of the communicable disease, and Communicable Disease–Business Interruption covers the short-term business-interruption loss. *Id*. When AFM added the Communicable Disease coverages to its form Policy in late 2016, it described them as "Additional Coverages," "Coverage Extensions," and "expansion[s] in coverage." ECF 271-2 at 174, 177. They were "an enhancement to [AFM's] form that nicely rounds out the overall package." *Id*. at 184. Neither of the Communicable Disease coverages indicates anywhere that they are "exceptions" or "exemptions" of any sort. The Policy defines a covered "communicable disease" as a disease "[t]ransmissible from human to human by direct or indirect contact with

5

an affected individual or the individual's discharges" or Legionellosis. Exh. D at 58.

*Second*, the Policy covers "Business Interruption loss . . . as a direct result of physical loss or damage of the type insured." Exh. D at 35. There is no dispute that the business-interruption coverages require physical loss or damage. Under the language of the Policy, a communicable disease on-site may trigger the broader Business Interruption coverages, if the communicable disease causes physical loss or damage.

The Communicable Disease coverages require streamlined proof with streamlined coverage and low sublimits. But where the communicable disease causes physical loss or damage, the Policy's limits of $327 million for "Gross Earnings" apply, just as they would for physical loss or damage caused by any other covered peril. Exh. D at 63.

The Policy contains a Contamination Exclusion. Specifically, it excludes "Contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." Exh. D at 21. The Policy defines "Contamination" to be "any condition of property due to the actual or suspected presence of any . . . virus [or] disease causing or illness causing agent . . . ." *Id*. at 58.

6

## II.   The first district judge denies AFM's motion for summary judgment on all coverage claims.

The district judge assigned to the case from its inception denied AFM's motion for summary judgment on all Treasure Island's claims for coverage. Exh. A at 10. The decision came after two years of significant discovery, including six expert reports and corresponding expert depositions on behalf of Treasure Island, documenting the on-site presence of, and physical loss or damage caused by, COVID-19 and SARS-CoV-2, and the resulting financial loss to Treasure Island. ECF 272 at 5-13. In total, the parties conducted 19 depositions and produced 11,749 pages of documents. The decision likewise came after the magistrate judge sanctioned AFM because it "hid" critical relevant evidence that revealed the insurer's knowledge and understanding that some communicable diseases may cause physical loss or damage as that phrase is used in the Policy. ECF 281.

The court ruled on summary judgment that Treasure Island "presented sufficient evidence from which a jury could find that it did in fact suffer physical loss or damage." Exh. A at 5. Notably, Treasure Island's expert evidence was unrebutted, as AFM offered no expert evidence of its own. ECF 272 at 11. Treasure Island presented evidence showing that its employees were present on-site with symptoms of COVID-19. Exh. A at 5. Moreover, the court held that, under the specific Policy that AFM issued, "'air' in [Treasure Island's] premises is insured property." *Id*. at 6.

The court also held that no exclusion applied to bar coverage. *Id*. AFM relied the Contamination Exclusion and one other, the Loss of Use Exclusion. The court held that the Contamination Exclusion did not apply because interpreting it as broadly as AFM urged would nullify the express coverage for communicable disease. *Id*. at 6-7. Relying on the "context" of the remainder of the Policy, the court observed that "it would be meaningless (and impossible) to cover the physical removal of a disease but exclude the virus that causes it." Exh. A at 7. For that reason, "[t]he contamination exclusion and communicable disease provision appear to be contradictory." *Id*. As for the Loss of Use exclusion, it is simply the inverse of coverage—if there is coverage, the exclusion by its terms does not apply, and so the inapplicability of the exclusion necessarily followed from the court's coverage determination. *Id*.

Finally, the court held that Treasure Island had proved coverage under the presence-based Communicable Disease provisions. *Id*. AFM's summary-judgment arguments pointed only to a disputed question of fact about whether the disease was present at Treasure Island before closure. *Id*. at 8.

Because of these disputed questions of fact—whether Treasure Island suffered physical loss or damage and whether the Communicable Disease coverages were triggered—the court denied summary judgment as to the coverage claims and set the case for trial on Treasure Island's claims for breach of contract

and declaratory judgment. *Id*. at 8; ECF 312. The court, however, dismissed Treasure Island's claims for bad faith and violation of the unfair claims practices act.

### III. After "reassignment," the second district judge summarily dismisses all claims based solely in *JGB Vegas Retail*.

On November 18, 2024, the case was "randomly reassigned" to a different district judge. Exh. B at ECF 326. The reassignment was unexplained. Nine days later, the second judge reversed the original judge's decision, entered judgment in favor of AFM, and dismissed the case *in its entirety* even though there was no motion before her to do so. Exh. C.

AFM had moved for reconsideration of the original summary-judgment decision. ECF 302. Notably, AFM's motion was limited to the business-interruption coverages that require physical loss or damage. *Id*. at 1. AFM expressly stated that it "does not seek reconsideration of the [summary judgment] Order's denial as it relates to the Communicable Disease coverages." *Id*. at 2. AFM's argument was based solely on *JGB Vegas Retail*. *Id*. at 5-10. Treasure Island cross moved for reconsideration solely on the claims for bad faith and the Nevada unfair claims practices act. ECF 307.

Nine days after the matter was "reassigned" to her, the second district judge summarily dismissed the entire case. Exh. C at 8. She did so even as to the Communicable Disease coverages which, as noted, were not before her on the

motion for reconsideration. *Id*. As for the business-interruption coverages that require physical loss or damage, the second judge ruled that *JGB Vegas Retail* compelled dismissal because, in her view, the Nevada Supreme Court had foreclosed any argument that COVID-19 could cause "physical loss or damage." *Id*. at 6.

This timely appeal followed. Exhibit E (notice of appeal, ECF 329).

## IV. There is extrinsic evidence of express intent to cover the physical loss or damage from a communicable disease, evidence that AFM was sanctioned for hiding.

There is evidence that explicitly shows that the AFM Policy covers physical loss or damage from a communicable disease. AFM was sanctioned for discovery misconduct when it hid this evidence from the court.

AFM's claims-handling procedures manual expressly recognizes that a communicable disease like COVID-19 can cause physical loss or damage. *Treasure Island, LLC v. Affiliated FM Ins. Co.*, 2023 WL 6295500, at *3 (D. Nev. Sept. 26, 2023) ("*Treasure Island I*"). AFM personnel coded Treasure Island's claim as one for "[p]hysical loss or damage which results from the actual presence of a communicable disease and the associated business interruption as defined in the policy." *Id*. at *4; ECF 272 at 20 (and evidence cited). AFM made false or misleading statements to Treasure Island and the court in order to "hid[e]" this evidence, Loss Code 60. *Treasure Island I* at *3. Loss Code 60, in the words of the

magistrate judge below, "links the concepts of '[p]hysical loss or damage' and 'the actual presence of a communicable disease' to 'the associated business interruption as defined in the policy.'" Id.

As a sanction for misconduct, the court (1) barred AFM "from arguing physical loss or damages cannot be caused by a communicable disease or that there is no circumstance under which Defendant may find coverage reaches physical loss or damage arising from a communicable disease" and (2) ordered AFM to pay Treasure Island more than $55,000 in attorney's fees and costs. *Id*. at *5; *Treasure Island, LLC v. Affiliated FM Ins. Co*., 2024 WL 324782, at *2 (D. Nev. Jan. 26, 2024) ("*Treasure Island II*").

### V. The Nevada Supreme Court has agreed to consider *Bloomin' Brands*, an appeal that presents issues similar to this case.

Shortly before the second district judge dismissed the entire case, the Nevada Supreme Court indicated it would consider an appeal in the *Bloomin' Brands* case to decide whether *JGB Vegas Retail* controls when the policy contains express disease coverage.[5]

The policy at issue in *Bloomin' Brands* is similar in material respects to the AFM Policy here: it provides business-interruption coverage that requires "direct physical loss, damage or destruction" and also specifically contains explicit disease

---

[5] Counsel for Treasure Island is also counsel for Bloomin' Brands.

coverage—called "Infectious or Contagious Disease" coverage—that does *not* require "physical loss, damage or destruction." Order on Summary Judgment, *Bloomin' Brands, Inc. v. ACE Am. Ins. Co*., No. A-21-830204-B (Nev. Dist. Ct. June 21, 2024), slip. op. at 1-3.[6] Specifically, the Infectious or Contagious Disease coverage endorsement extends coverage to business interruption from "[a]n outbreak of Infectious or Contagious Disease manifested by any person while at an insured location including the expense of any necessary clean-up or decontamination." *Id*. at 2. (The policies do not define "Infectious or Contagious Disease.") The endorsement does not require "physical loss, damage or destruction." *Id*.

The only issue before the trial court was application of the business-interruption coverage that requires "physical loss, damage or destruction. *Id*. at 3. The court was not asked to decide whether there was coverage under the Infectious or Contagious Disease endorsement. *Id*. Instead, the question was whether the express coverage for the peril of Infectious or Contagious Disease signals a

---

[6] This Court may take judicial notice of the *Bloomin' Brands* case and the documents filed therein, which are not disputed. These are not adjudicative facts but legislative facts because they are not the facts of this particular case. Fed. R. Ev. 201, 1972 advisory committee note. Even they were adjudicative facts, they may still be judicially noticed. *Frlekin v. Apple, Inc*., 979 F.3d 639, 643 n.1 (9th Cir. 2020).

broader meaning to the phrase "physical loss, damage or destruction" than that phrase might otherwise carry, such that *JGB Vegas Retail* does not control. *Id*.

The trial court held that the Infectious or Contagious Disease coverage *does* impart such a broader meaning to "physical loss, damage or destruction" and that *JGB Vegas Retail* therefore does not control. *Id*. at 4. The disease endorsement provides interpretive *context* that was lacking in *JGB Vegas Retail*. *Id*. Specifically, the Infectious or Contagious Disease endorsement reveals a scope of coverage that includes a peril not explicitly evidenced in *JGB Vegas Retail*. The endorsement explicitly *extends* coverage, meaning that coverage for the peril of infectious or contagious disease already exists in the body of the policies. *Id*. If the policies did not already cover the peril of Infectious or Contagious Disease, the endorsement could not *extend* that coverage to situations where the disease did *not* cause "physical loss, damage or destruction." *Id*. Therefore, the policies *must* cover losses when Infectious or Contagious Disease *does* cause "physical loss, damage or destruction." *Id*. This, in turn, means that "physical loss, damage or destruction" has a broader meaning than the cognate "physical loss or damage" phrase in *JGB Vegas Retail*. *Id*. For that reason, the court held that COVID-19 *could* cause "physical loss, damage or destruction" within the meaning of the policies at issue there. *Id*.

13

The Nevada Supreme Court has agreed to decide the correctness of the trial court's decision and, therefore, the reach of *JGB Vegas Retail* to policies that include express disease coverage. The insurers filed a petition for a writ of mandamus with the Nevada Supreme Court on August 29, 2024. Pet. Writ Mandamus, *Bloomin' Brands*, *supra* (Doc. 24-31231) ("*Bloomin' Brands* Mandamus Petition"). In that petition, the insurers advised the court that *JGB Vegas Retail* had left the law unclear, such that the court should "clarify" (or issue "clarification") on an "important issue of law." *Id*. at 2, 4, 11, 12. They urged the court to clarify that the express coverage for Infectious or Contagious Disease does *not* affect the scope of the phrase "physical loss, damage or destruction." *Id*. at 25. The Nevada Supreme Court agreed to consider the petition on November 13, 2024, ordering Bloomin' Brands to file an answer. Order Directing Answer, *Bloomin' Brands*, *supra* (Nov. 13, 2024), Doc. No. 24-42831.

## ARGUMENT

Rule 5 of the Nevada Rules of Appellate Procedure provides that the Nevada Supreme Court "may in its discretion answer questions of law certified to it by . . . a United States court of appeals for any circuit . . . ." Nevada R.A.P. 5(a). Certification of a question of law is appropriate if "the answers may be determinative of part of the federal case, there is no controlling [Nevada] precedent, and the answer will help settle important questions of law." *Wilmington*

*Trust FSB v. A1 Concrete Cutting & Demolition, LLC*, 289 P.3d 1199, 1208 (Nev. 2012) (citation and quotation marks omitted); *see N. River Ins. Co. v. James River Ins. Co.*, 116 F.4th 855, 858 (9th Cir. 2024) (considering, in decision to certify, whether question presents important public-policy ramifications unresolved in state; issue is new, substantial, and of broad application; and state court's caseload and spirit of comity and federalism).

This Court should do so here. There is a question of law that may be determinative of a large portion of this case, and there is no controlling Nevada precedent. The question is novel with important, broad public-policy ramifications. This is an opportune time to certify a question of law because the Nevada Supreme Court is already considering a similar issue in the *Bloomin' Brands* case. Certification would avoid potentially inconsistent outcomes.

## I. The case presents important, potentially determinative questions of law for which there is no controlling precedent in Nevada.

No Nevada precedent controls the answers to the proposed certified questions—whether the phrase "physical loss or damage" must always carry the exact same meaning regardless of evidence of intent, internal to the policy language and extrinsic,[7] that the phrase encompasses the effects on property caused

---

[7] *Int'l Game Tech. v. Illinois Nat'l Ins. Co.*, No. 216CV02792APGNJK, 2017 WL 5505039, at *3 (D. Nev. Nov. 16, 2017) ("extrinsic evidence is nonetheless relevant even when policy language initially appears unambiguous"); *see First*

*— footnote cont'd —*

by a communicable disease, and whether indoor air is insured property under the AFM Policy and Nevada law.

*JGB Vegas Retail* does not control the result in this case because it cannot be understood to mean that the phrase "physical loss or damage" has one and only one meaning in each and every policy regardless of the context of the policy as a whole. The Nevada Supreme Court said as much in *JGB Vegas Retail* itself. Throughout the decision, the court emphasized that it was deciding the meaning of terms in "context." *JGB Vegas Retail*, 535 P.3d at 261, 267, 268. "[C]ontext is important in interpreting policy language." *Id*. at 268. To illustrate the point, the court distinguished the result in that case from the opposite result another case decided under materially identical policy language. *Id*. at 268 (distinguishing *C.J. Segerstrom & Sons v. Lexington Ins. Co*., 724 F. Supp. 3d 1052 (C.D. Cal. Feb. 27, 2023)). Although the specific provision the court was discussing was a pollution and contamination exclusion, the salient point remains: materially identical language may have a broader or narrower meaning depending on *context*. *Id*. The exclusionary language in *C.J. Segerstrom* carried a meaning different from the

---

*Nat'l Mortg. Co. v. Fed. Realty Inv. Tr*., 631 F.3d 1058, 1067 (9th Cir. 2011) (citation and quotation marks omitted) (under California law, "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible").

same language in *JGB Vegas Retail* because context—the express grant of communicable-disease coverage—"guided" the meaning of the exclusion in *C.J. Segerstrom*. *Id*. The correctness of *C.J. Segerstrom* is not germane. What matters is the Nevada Supreme Court's explicit recognition that context—coverage for communicable disease—can inform the meaning of policy terms, such that the very same words in one policy can carry a different meaning in another.

The *Bloomin' Brands* case underscores that this is the correct understanding of *JGB Vegas Retail*—the same words can have different meanings depending on context. The *only* issue in that case is whether *JGB Vegas Retail*'s interpretation of "physical loss or damage" extends to a policy that expressly covers the peril of communicable disease. This is an "important" question that requires "clarification" from the court. *Bloomin' Brands* Mandamus Pet. at 2, 4, 11, 12. The court's decision to consider the petition tends to indicate that it, too, believes that this is an important question that requires clarification. As the court stated in *JGB Vegas Retail*, it does *not* grant interlocutory writs for error-correction purposes. *JGB Vegas Retail*, 535 P.3d at 259. (The exception, "when there is no other adequate legal remedy," *id*., obviously does not apply in *Bloomin' Brands*, where a right of appeal would exist from the final judgment; the insurers there did not even argue that the exception applied.) The insurers in *Bloomin' Brands* founded their petition squarely on the "importan[ce]" of the legal question and the need for "clarity."

*Bloomin' Brands* Mandamus Pet. at 2, 4, 11, 12. The Nevada Supreme Court's call for a response therefore indicates that the court may believe there is an question of state-wide importance in need of resolution.

The issues *this* case presents are just as important as the issues the insurers presented in *Bloomin' Brands*. And the need for clarity is no less great.

AFM may argue that certification is not appropriate because it would not "determine" the result of this appeal as to all issues, but that is the wrong standard. The law has long been clear in Nevada that certification is appropriate if "the answers may be determinative of part of the federal case." *Wilmington Trust FSB*, 289 P.3d at 1208 (citations and quotation marks omitted). The applicability of *JGB Vegas Retail* easily satisfies this standard.

## II.    The Nevada Supreme Court is already considering similar issues, making certification especially apt.

The *Bloomin' Brands* case is important as well because it shows that the Nevada Supreme Court is *already* considering the applicability of *JGB Vegas Retail* to policies that contain express disease coverage. In deciding whether to certify a question of law, this Court considers the state court's caseload and the spirit of comity and federalism. *N. River Ins. Co.*, 116 F.4th at 858. Where the state court *already* has before it a case raising similar questions, this Court has not hesitated to certify a question to aid consideration of the issue. *See French Laundry Partners, LP v. Hartford Fire Ins. Co.*, 58 F.4th 1305, 1307 (9th Cir. 2023) ("We

18

believe the Supreme Court of California may gain some efficiencies through concurrent consideration of our certification in this case.").

AFM may argue that rather than certify, the Court should simply defer consideration of the merits of this case until *Bloomin' Brands* is decided. That would be inefficient. Although this case and *Bloomin' Brands* raise a similar fundamental question—the applicability of *JGB Vegas Retail* to policies with express communicable-disease coverage—there are differences. The biggest difference is that the Communicable Disease coverages in *this* case are found in the body of the AFM Policy, while the Infectious and Contagious Disease coverage in *Bloomin' Brands* was added to those policies by an endorsement. This difference may, or may not, matter, but putting the question to the Nevada Supreme Court is far more efficient than attempting to divine an answer with additional briefing.

AFM may also argue that the Court should deny certification because Treasure Island did not ask for it below. This Court's presumption against certifying a question after the federal district court has ruled should not apply in this case. *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008). This is not a case where a party is seeking a "second chance at victory through certification." *Id*. (citation and quotation marks omitted). Treasure Island had no opportunity to seek certification before the reassignment and abrupt change of course in the district court. The Nevada Supreme Court called for a response to the petition in *Bloomin'*

*Brands* on November 13. Order Directing Answer, *Bloomin' Brands*, *supra* (Nov. 13, 2024), Doc. No. 24-42831. Three business days later, this case was "reassigned," and nine days after that (seven business days) the second judge reversed the first judge. Until that order reversing the summary-judgment decision, Treasure Island *prevailed* on summary judgment and was preparing for trial. These are not the circumstances where a party is seeking a second bite at the apple. And, as noted, the Nevada Supreme Court is considering the issue anyway, underscoring the efficiency of certification in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should certify two questions of law to the Nevada Supreme Court:

> Was it error to interpret the phrase "physical loss or damage," as used in the AFM Policy that explicitly covers the risk of Communicable Disease, as having the exact same meaning as the phrase "physical loss or damage" when used in a policy that offers no explicit indicia of intent to cover Communicable Disease?

> Does *JGB Vegas Retail* control the meaning of the phrase "physical loss or damage" when there is evidence of contracting intent that informs of a specifically intended meaning?

> Is indoor air insured under a property-insurance policy, under Nevada law?

Respectfully submitted,


TREASURE ISLAND, LLC,
By its attorneys,

*s/ Nicholas D. Stellakis*
Harry L. Manion
Christopher J. Cunio
Nicholas D. Stellakis
Hunton Andrews Kurth LLP
60 State Street, Suite 2400
Boston, Massachusetts 02109
(617) 648-2800
hmanion@huntonAK.com
ccunio@huntonAK.com
nstellakis@huntonAK.com

Michael S. Levine
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
(202) 955-1500
mlevine@huntonAK.com


Dated: February 26, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2025 this document was filed through the Electronic Case Filing system, and that copies will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*s/ Nicholas D. Stellakis*
Nicholas D. Stellakis

## CERTIFICATE OF COMPLIANCE

I am the attorney for Treasure Island, LLC. I certify that pursuant to Circuit Rule 27-1 and Fed R. App. P. 27, the foregoing motion is prepared in a format, typeface, and type style that complies with Fed. R. App. P. 27, 32(a)(5)-(6) and contains the following number of words: **4,981**.

*s/ Nicholas D. Stellakis*
Nicholas D. Stellakis